FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 06, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEBBIE MARIE H.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 2:18-CV-00394-RHW

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 11, 12. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 1383(c)(3) of the Commissioner of Social Security's final decision, which denied her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §1381-1383F. *See* Administrative Record (AR) at 1-3, 15-23. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 1

**GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I.     Jurisdiction

Plaintiff filed her application for Supplemental Security Income on April 11, 2016. *See* AR 15, 136-41. She alleged disability beginning on January 7, 1999.[1] AR 136. Plaintiff's application was initially denied on July 22, 2016, *see* AR 71-74, and on reconsideration on October 11, 2016. *See* AR 78-80. Plaintiff then filed a request for a hearing on December 9, 2016. AR 81-83.

A hearing with Administrative Law Judge ("ALJ") Mark Kim occurred on November 1, 2017. AR 28, 30. On February 14, 2018, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for supplemental security income. AR 12-23. On November 1, 2018, the Appeals Council denied Plaintiff's request for review, AR 1-3, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. On December 27, 2018, Plaintiff timely filed the present action challenging the denial of benefits. ECF No. 1. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g).

///

---

[1] However, for claims under Title XVI, the month after the application's filing date is the earliest that SSI benefits are payable. *See* 20 C.F.R. § 416.335.

///

## II. Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 416.920(a)(4); *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. § 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. § 416.971. If not, the ALJ proceeds to step two.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. § 416.909. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is

able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 388-89 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g). The scope of review under these sections is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the court must uphold that decision. *Molina v. Astrue*, 674

F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954-59 (9th Cir. 2002).

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 51 years old when she filed her application for benefits. AR 22, 136. She attended school through either the 10th or 11th grade and can communicate in English. AR 22, 32, 159, 161, 227. She has no past relevant work. AR 21.

## V. The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time from April 11, 2016 (the date Plaintiff filed her application for benefits) through February 14, 2018 (the date the ALJ issued his decision). AR 15, 23.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date she filed her application for benefits (citing 20 C.F.R. § 416.971 *et seq.*). AR 17.

**At step two**, the ALJ found Plaintiff had the following severe impairment: depressive disorder (citing 20 C.F.R. § 416.920(c)). AR 17.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of

the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926). AR 17-18.

**At step four**, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but that she did have non-exertional limitations due to her severe mental impairment. AR 18. The ALJ found that despite these mental limitations, Plaintiff could still perform simple and routine tasks that required no greater than a Special Vocational Preparation (SVP) level of 2. AR 19. Because Plaintiff did not have any past relevant work, transferability of job skills was not an issue. AR 22.

**At step five**, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform. AR 22. These included a fish cleaner, cook helper, and cleaner/housekeeper. AR 22.

## VI. Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. ECF No. 11 at 15. Specifically, she argues the ALJ: (1) improperly discredited her subjective pain complaint testimony; (2) improperly weighed the medical opinion evidence. *Id.* at 11-14.

## VII. Discussion

**A.  The ALJ did not Improperly Reject Plaintiff's Subjective Complaints**

Plaintiff first argues the ALJ erred by discounting the credibility of her testimony regarding her subjective symptoms. ECF No. 11 at 11-14. Specifically, she argues that the ALJ erred by: (1) ignoring the fact that her depression symptoms prevented her from attending counseling regularly, (2) discounting her credibility based on her ability to perform household chores and leisure activities, and (3) cherry-picking medical records that demonstrated improvement. *Id.*

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id*. Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, the ALJ can reject the claimant's testimony about the severity of his or her symptoms only by offering "specific, clear, and convincing reasons" for doing so. *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of

treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce some degree of the symptoms Plaintiff alleged. AR 19. However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 19.

The ALJ offered multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. *See* AR 19-21. First, the ALJ discounted Plaintiff's subjective complaints because of her noncompliance with recommended treatment. AR 19-20. The ALJ noted that Plaintiff did not seek regular treatment during the period at issue. AR 19-20. She briefly attended mental health counseling at Frontier Behavioral Health beginning in August 2016. AR 242-47. During her intake, she stated that she had not sought any mental health treatment in five years. AR 243. She did not attend therapy appointments or group sessions on October 25, 2016, November 8, 2016, November 15, 2016, or November 22, 2016. AR 262-63. On November 28, 2016, Frontier Behavioral Health sent Plaintiff a letter notifying her that she would be discharged from services if she did not respond. AR 261-62. Plaintiff responded to this letter and made an appointment for January 2017. AR 261. However, she did not attend this

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9**

appointment. AR 261. Accordingly, Frontier Behavioral Health terminated her from services and noted that "treatment cannot be successful without commitment." AR 261. Plaintiff also stopped taking her prescription Zoloft, stating that "it made her feel spacey." AR 227. An ALJ may properly discount a claimant's subjective complaints when treatment is inconsistent with the level of complaints or a claimant is not following prescribed treatment without good reason. *Molina*, 674 F.3d at 1114; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). If a claimant's condition is not severe enough to motivate them to follow the prescribed course of treatment, this calls their alleged limitations into question. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Citing her hearing testimony, Plaintiff argues that she did not seek regular treatment due to her depression and anxiety symptoms. ECF No. 11 at 12. However, the ALJ addressed this issue. AR 20. The ALJ reasoned that the Plaintiff's activities—such as shopping, going outside, and going on walks and bike rides—belied her assertion that she was unable to leave her house due to her symptoms. AR 20. The ALJ also reasoned that Plaintiff's medical records did not support this degree of symptomology. AR 20. Plaintiff makes no attempt to address these rationales or explain why they were erroneous. *See* ECF No. 11 at 12.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 10

Second, the ALJ discounted Plaintiff's subjective complaints because they were belied by her daily activities. AR 20. The ALJ noted that Plaintiff admitted that she is able to cook, sweep, wash dishes, take care of her birds and cat, shop, clean, vacuum, read, maintain a relationship with her boyfriend, and go on walks and bike rides. AR 20; *see* AR 35, 37, 167, 169, 228, 239. Activities inconsistent with the alleged symptoms are proper grounds for questioning the credibility of subjective complaints. *Molina*, 674 F.3d at 1113; *see also Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(3)(i).

Plaintiff argues that these daily activities "are not necessarily reasons to doubt her credibility." ECF No. 11 at 12. Plaintiff cites several Ninth Circuit cases holding that a claimant's ability to perform some daily activities, such as grocery shopping, cooking, watching television, driving, etc., does not necessarily detract from his or her credibility. *Id.* (citing *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001); *Reddick v. Chater*, 157 F.3d 715, 722-24 (9th Cir. 1998); *Fair*, 885 F.2d at 603). Plaintiff is correct that ALJs must be cautious when concluding that daily activities are inconsistent with pain testimony. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). However, if the claimant's level of activity is inconsistent with the limitations he or she claims to have, this has a bearing on the claimant's credibility. *Id.*; *Reddick*, 157 F.3d at 722. And here, Plaintiff testified that she "can't get out of bed" and "can't get out of the house." AR 34-35. Because

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 11

this was inconsistent with her level of activity, this was a proper basis for discounting her credibility.

Finally, the ALJ discounted Plaintiff's subjective complaints on the basis that they were inconsistent with the medical evidence. *See* AR 20-21. In making this determination, the ALJ outlined the contents of Plaintiff's psychological evaluation from the Department of Social & Health Services (DSHS), as well as her mental health records from Frontier Behavioral Health. AR 20-21; *see* AR 227-230, 232-247. The ALJ then concluded that these records did not "establish the presence of debilitating depression," nor did they reflect symptoms that prevented her from performing "simple and routine tasks" in a work environment. AR 20-21. An ALJ may discount a claimant's subjective symptom testimony when it is inconsistent with the medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Plaintiff argues the ALJ cherry-picked from her medical records and "pick[ed] out a few isolated incidents of improvements over a period of months or years and [treated] them as a basis for concluding that [she] is capable of working." ECF No. 11 at 13-14. However, the records the ALJ relied on—the DSHS psychological evaluation and notes from Frontier Behavioral Health—are the *only* medical records in the file that pertain to the period at issue. As the ALJ observed,

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 12

the medical records in this case are very sparse—they comprise less than 40 total pages. *See* AR 227-264. The only other medical records in the file at all are those from Community Health Association of Spokane (CHAS), where Plaintiff sporadically sought treatment in the mid-2000s—over 10 years before the period at issue here.[2] *See* AR 249-259. Given that the ALJ outlined the entire (albeit short) medical record, Plaintiff's argument that the ALJ cherry-picked instances of improvement from the record is without merit.

When the ALJ presents a reasonable interpretation that is supported by substantial evidence, it is not the Court's role to second-guess it. For the reasons discussed above, the ALJ did not err when discounting Plaintiff's subjective complaint testimony because the ALJ provided multiple clear and convincing reasons for doing so.

**B.    The ALJ did not Err in Weighing the Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in evaluating and weighing the medical opinion evidence. ECF No. 11 at 14. Specifically, she argues that the ALJ discounted examining psychologist Peter Buerger, Ph.D.'s opinion based on Dr. Buerger's limited, one-time contact with her, and that this was improper because his opinion was corroborated by other records. *Id.*

---

[2] In her reply brief, Plaintiff asserts that these records were from July and August <u>2014</u>. ECF No. 13 at 3. This is incorrect—they were from 2004. *See* AR 249-255.

Title XVI's implementing regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (non-examining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *see* 20 C.F.R. § 416.927(c)(1)-(2). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining physician's. *Holohan*, 246 F.3d at 1202.

If a treating or examining doctor's opinion is contradicted by another doctor's opinion—as is the case here—an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.* An ALJ satisfies the "specific and legitimate" standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012. In contrast, an ALJ fails to satisfy the standard when he or she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his [or her] conclusion." *Id.* at 1012-13.

Plaintiff argues that the ALJ discounted Dr. Buerger's opinion based on his "limited one time examination" of her. ECF No. 11 at 14. She argues that this was improper because Dr. Buerger's opinion was corroborated by other records from CHAS and Frontier Behavioral Health. *Id.*

However, Plaintiff mischaracterizes the ALJ's reasoning. The ALJ did not discount Dr. Buerger's opinion because of his limited, one-time contact with her—rather, the ALJ discounted his opinion because it was inconsistent with his own examination findings. *See* AR 21. The ALJ noted Dr. Buerger's findings that Plaintiff's depression had either no effect, a mild effect, or a moderate effect on her ability to perform nearly every work activity. AR 21; *see* AR 228. Moreover, Dr. Buerger's mental status examination was essentially normal. *See* AR 229-30. He observed that Plaintiff's dress was appropriate, that her attitude and behavior were "very positive," that her affect showed "no aberration," and that her thought process, orientation, perception, fund of knowledge, concentration, abstract thought, and insight and judgment were all normal. AR 229-30. The ALJ noted that Dr. Buerger's only abnormal finding was Plaintiff's memory, which he found was diminished. AR 21; *see* AR 230. Based on these relatively mild findings, the ALJ assigned little weight to Dr. Buerger's opinion that Plaintiff's severe depression prevented her from working, reasoning that it was "inconsistent with the results of his limited one-time examination of the claimant." AR 21. So while

the ALJ did make a passing reference to Dr. Buerger's limited, one-time contact with Plaintiff, this was not the crux of his reasoning. Rather, reading the entire paragraph in context, the ALJ clearly discounted Dr. Buerger's opinion because his examination findings were inconsistent with his ultimate functional assessment.[3] This was proper. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989). Thus, the ALJ did not error in evaluating and weighing the medical opinion evidence.[4]

## VIII.  Order

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED.**

---

[3] In her reply brief, Plaintiff argues that Dr. Buerger's exam findings were not inconsistent with his ultimate opinion. ECF No. 13 at 4-5. She notes Dr. Buerger's statements that she was "severely depressed" and that as a result she had "severe limitation in her ability to complete a normal work day." *Id.* at 4. This argument misses the point. Plaintiff simply identifies Dr. Buerger's *conclusions*, which no one disputes. The problem though, as the ALJ pointed out, is that those conclusions were not supported by Dr. Buerger's actual examination findings.

[4] The Commissioner argues at length that the ALJ properly discounted the opinions of the providers from CHAS and Frontier Behavioral Health. ECF No. 12 at 16-18. However, Plaintiff only argues that the ALJ erred in discounting Dr. Buerger's opinion, given that his opinion was *corroborated* by the records from CHAS and Frontier Behavioral Health. *Id.* Plaintiff does not appear to separately argue that the ALJ erred in weighing these other records. *See* ECF No. 11 at 14.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 16

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

///

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this 6th day of December, 2019.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 17